IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CAMERON MASON,

    Petitioner,

v.

WARDEN, WARREN
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:16-CV-1134
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## I.    FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> On October 3, 2014, the Delaware County Grand Jury indicted appellant, Cameron Mason, on four counts of rape in violation of R.C. 2907.02(A)(1)(c) and (2). Said charges arose from an incident involving M.K. while the two of them were attending a graduation party. An indictment was also filed against a co-defendant, D'Shawn Barnes, which was subsequently dismissed on January 12, 2015 (Case No. 14–CR–I–10–0440A).
>
> A jury trial commenced on December 16, 2014. The jury found appellant guilty of one of the rape counts, a violation of R.C. 2907.02(A)(1)(c). By sentencing entry filed January 27, 2015, the trial court sentenced appellant to five years in prison.
>
> Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:

> "THE CONVICTION OF RAPE AGAINST DEFENDANT IS
> NOT SUSTAINED BY THE EVIDENCE AND IS AGAINST
> THE MANIFEST WEIGHT OF THE EVIDENCE."

*State v. Mason*, No. 15-CAA-02-0017, 2015 WL 9594651, at *1 (Ohio App. 5th Dist. Dec. 28, 2015) (paragraph symbols and heading omitted). On December 28, 2015, the appellate court affirmed the judgment of the trial court. *Id.* On May 4, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Mason*, 145 Ohio St.3d 1460 (Ohio 2016).

On November 23, 2016, Petitioner filed this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. As his sole claim for relief, Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction. It is the position of the Respondent that this claim fails to provide a basis for relief.

In addition, on February 9, 2017, Petitioner filed a pro se "Motion for Newly Discovered Evidence and in Alternative Motion Pursuant to Criminal R. 52(B)" in which he asserted that he had been denied the effective assistance of trial counsel. The trial court denied the motion, and on September 7, 2017, the appellate court affirmed the judgment of the trial court. *See State v. Mason*, No. 17CAA030017, 2017 WL 4005135 (Ohio App. 5th Dist. Sept. 7, 2017). However, the Court has reviewed those proceedings, and they are not relevant to the claims raised herein.

## II.     STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. –––, 134

S. Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748–49. The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

## III. DISCUSSION

Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction. The state appellate court rejected Petitioner's claim on the merits:

> Appellant claims his conviction for rape was against the sufficiency and manifest weight of the evidence as there was no independent evidence to establish a violation of R.C. 2907.02(A)(1)(c). We disagree.
>
> On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St .3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52. The granting of a new trial

"should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260.

Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(c) which states:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

As stated by this court in *In re R.G.,* 5th Dist. Licking No. 08–CA–121, 2009–Ohio–2646, ¶ 28:

The Ohio Supreme Court has held "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in M.K.'s ability, either to appraise the nature of his conduct or to control his conduct." *State v. Zeh* (1987), 31 Ohio St.3d 99, 509 N.E.2d 414. "Substantial impairment" need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with M.K. and by permitting the trier of fact to obtain its own assessment of M.K.'s ability to either appraise or control her conduct." *State v. Brady*, Cuyahoga App. No. 87854, 2007–Ohio–3333.

Voluntary intoxication is a "mental or physical condition" that can constitute "substantial impairment" for purposes of R.C. 2907.02(A)(1)(c). *State v. Harmath*, 3rd Dist. Seneca No. 13–06–20, 2007–Ohio–2993.

The incident in question occurred during a high school graduation party at the home of Morgan Eiland, a friend of M.K. T. at 152–153, 187. Appellant did not contest the fact that he had sex with

5

M.K., but claimed it was consensual. Appellant argues there was no independent evidence that M.K. was asleep the entire time, no evidence of trauma to M.K., and no evidence that he knew she was intoxicated or had consumed alcohol.

The facts and appellant's own admission establish he had vaginal intercourse with M.K. T. at 280–283, 300–302, 349–350, 354; State's Exhibit 1. Appellant explained he arrived at the party between 9:00 and 10:00 p.m. and had minimal contact with M.K. T. at 341–342, 355–356. Around midnight, appellant went upstairs to a bedroom to play video games with the co-defendant, and around 1:00 a .m., M.K. and others came into the bedroom and she lay down on the bed. T. at 345346, 356–357. Appellant claimed M.K. was not asleep, but she was not "participating in the conversation." T. at 357. Around 2:30 a.m., everyone left the room and appellant lay down beside M.K. T. at 347. They talked, kissed, and engaged in sexual intercourse. T. at 347–350, 359. M.K. was not asleep or passed-out. T. at 349, 357. Appellant claimed he had not observed M.K. drinking and did not know she was intoxicated. T. at 342–343, 346, 354–355.

M.K. admitted to drinking heavily from around 2:00 to 8:00 p.m., and had no memory of what happened after 8:00 p.m. until 3:00 a.m. T. at 191–193, 195, 211. She remembers waking up at that time on a bed with "someone" engaging in vaginal intercourse with her. T. at 196–197, 199, 238. She got up, opened the door to leave, looked back, and observed two individuals, appellant and the co-defendant, in the bedroom. T. at 196–198. She immediately fled to the bathroom, called her mother, and called/texted Ms. Eiland who went to the bathroom to help M.K. T. at 161, 171, 198–199, 235. M.K. went to the hospital and was examined by a sexual assault nurse examiner (hereinafter "SANE"). T. at 200. At no time did M.K. give appellant permission to engage in sexual intercourse with her. T. at 205–206.

Ms. Eiland and the SANE nurse, Leighann Clifford, described M.K. as disheveled, very upset, very tearful, trembling, hysterical, crying, and "barely could speak." T. at 161, 183, 263.

A partygoer, Jante Wright, testified he arrived at the party around 9:00 p.m. and M.K. was "pretty drunk." T. at 131–133, 142. Her breath smelled of alcohol and she was acting drunk. T. at 132. Later in the evening, M.K. told Mr. Wright she "needed to throw up," so he helped her to an upstairs bathroom and then to an empty bedroom where M.K. passed out/fell asleep on the bed. T. at 134–136, 150.

6

> Ms. Eiland testified at one point she walked by the bedroom and observed M.K. asleep on the bed and appellant and the co-defendant in the room playing video games. T. at 158–160. Later, Ms. Eiland observed M.K. still asleep in the "same exact place." T. at 161.
>
> As stated above, the trier of fact is in the best position to judge the credibility of the witnesses.
>
> Upon review, we find the corroborating evidence that M.K. was intoxicated, passed out/asleep, and nonresponsive to be sufficient to prove the rape was not consensual and appellant was aware of M.K.'s disability due to intoxication. We do not find any manifest miscarriage of justice.
>
> The sole assignment of error is denied.

*State v. Mason*, 2015 WL 9594651, at **1–3.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319). The prosecution is not, however, required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the

standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* Second, and even if a de novo review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id. See also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). Consequently, a habeas petitioner has a substantial hurdle to overcome, and Petitioner has not done so here.

> Ohio defines rape, as charged in this case, as:
>
> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender…, when any of the following applies:
> …
> (c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age.

Ohio Rev. Code § 2907(A)(1)(c).

First, Petitioner admitted that he engaged in intercourse with M.K.. (Transcript, Vol. III, pp. 347, 349–50). Further, the BCI report—prepared by the lab that documented the evidence in this case—conclusively showed that the DNA taken from the vaginal swabs of M.K. belonged to Petitioner. *Trial Transcript, Vol. II*, (Doc. 9-1, PageID# 429–33).

Second, the jury heard ample evidence from which it could have concluded that M.K. was "substantially impaired"—and that Petitioner was aware of her impairment. On May 24, 2014, M.K. and her friend, Morgan Eiland, graduated from high school and hosted a joint party at the Eiland residence. *Trial Transcript, Vol. I*, (Doc. 9-1, PageID# 259). M.K. testified that she began drinking alcohol during the mid-afternoon on that day. *Trial Transcript, Vol. I*, (Doc.

8

9-1, PageID# 321). She recalls drinking until at least 8:00 p.m, but remembers nothing from approximately 8:00 p.m. until 3:00 a.m. on May 25, 2014. (*Id.*, PageID# 322–23). Around 3:00 a.m., she woke to discover that "someone was having sex with [her]." (*Id.*, PageID# 326). She testified that she got her bearings, unlocked and opened the door to the bedroom where she was, and, with the light from the hallway shining in, she could see Petitioner and Barnes in the room. (*Id.*, PageID# 327–28). M.K. further testified that she never consented to sexual intercourse. (*Id.*, PageID# 335–36). On cross examination, she additionally testified that "you can't give anyone permission if you're asleep," and "I know I didn't give anyone permission." *Trial Transcript*, *Vol. II* (Doc. 9-1, PageID# 362.)

M.K.'s testimony regarding her inebriated state—or in the words of the statute, her "substantial[] impairment"—was corroborated by other testimony. Jante Wright, who had dated M.K. in the past, testified that when he first encountered M.K. that night, she was "pretty drunk." *Trial Transcript*, *Vol. I* (Doc. 9-1, PageID# 262.) Later that night, Wright assisted M.K. to a bathroom to vomit. (*Id.*, PageID# 264.) Although she didn't throw up, she did not feel well so Wright "picked her up," "carried her into the room next door[,] and laid her down on the bed." (*Id.*, PageID# 264.) She then "passed out." (*Id.*, PageID# 266.) Wright testified that he never considered initiating any kind of romantic encounter with M.K. because she was "too drunk," and because "she was passed out." (*Id.*, PageID# 279–80.)

Eiland also testified. During the party, she witnessed M.K. drinking wine. (*Id.*, PageID# 286.) Later in the evening, she saw M.K. asleep on her brother's bed, the room where Petitioner and Barnes were playing video games. (*Id.*, PageID# 288.) At that time, the lights were on and the door was open, but M.K. was not "mov[ing] at all." (*Id.*, PageID# 289). Around 1:30 a.m., when Eiland was going to her room to go to bed, she again saw M.K. in Eiland's brother's bed.

(*Id.*, PageID# 291.) M.K. was in the exact same place on the bed as she had been before; she hadn't moved. (*Id.*)

Around 3:30 a.m., M.K. texted Eiland, asking her to come to the bathroom. (*Id.*, PageID# 291.) M.K. was "[h]ysterical, crying, and . . . could barely speak. (*Id.*) M.K. told Eiland that she woke to find either Petitioner or Barnes having sex with her. (*Id.*, PageID# 292.) Eiland took M.K. outside and arranged for Petitioner and Barnes to leave the house because Eiland was fearful of what her father might do to them. (*Id.*, PageID# 294.) After the boys left, Eiland woke her parents who called M.K.'s mother. (*Id.*) M.K.'s mother came to the house and took her daughter to the hospital. (*Id.*)

At the hospital, a sexual assault nurse examiner ("SANE"), Leighann Clifford, examined M.K. Clifford testified at trial. *Trial Transcript*, *Vol. II* (Doc. 9-1, PageID# 379–410.) She described M.K.'s demeanor during the examination as "very upset," "very tearful," "wringing her hands," and kind of "trembling." (*Id.*, PageID# 393.)

At trial, Petitioner testified on his own behalf. He told the jury that he arrived at the graduation party between 9:00 and 10:00 p.m. at which time he saw M.K. *Trial Transcript, Vol. III* (Doc. 9-1, PageID# 471.) He testified that, to his knowledge, M.K. was not intoxicated and that he did not see her consume alcohol. (*Id.*, PageID# 472–73.) Around midnight or 12:30 a.m., he went upstairs with Barnes to play video games. (*Id.*, PageID# 475.) Petitioner testified that M.K. entered the bedroom around 1:00 a.m. (*Id.*, PageID# 476.) Eventually, Barnes left, and Petitioner testified that he and M.K. "began kissing and end up having sex." (*Id.*, PageID# 477–79.) Next, according to Petitioner, Barnes returned to the bedroom, and M.K. "jumped up and left the room." (PageID# 480.) After M.K. left, Petitioner fell asleep on the bed. (*Id.*, PageID# 481.) At 5:30 a.m., a friend woke Petitioner to take him home. (*Id.*, PageID# 481.)

Before this Court, Petitioner reiterates his story that the jury rejected at trial, *i.e.*, that M.K. consented or that Petitioner was unaware of M.K.'s impaired state. As the state court of appeals explained, "the trier of fact is in the best position to judge the credibility of the witnesses." Applying that deference, the state court found that "the corroborating evidence that M.K. was intoxicated, passed out/asleep, and nonresponsive [was] sufficient to prove the rape was not consensual and [Petitioner] was aware of M.K.'s disability due to intoxication." *State v. Mason*, 2015 WL 9594651, at *3. The state appellate court did not unreasonably apply federal law. To the contrary, the court reasonably applied Supreme Court precedent in concluding that, viewed in a light most favorable to the prosecution, the evidence presented at trial was sufficient to sustain Petitioner's conviction. Accordingly, Petitioner has not met his high burden under AEDPA.

## IV. RECOMMENDED DISPOSITION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


Date:  October 13, 2017                                   /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE